primary reason for that being that there's simply not sufficient evidence from which the jury could draw reasonable inferences of guilt that Mr. Iu committed an act putting the victim in threat or fear that caused a sexual act and with the attempted witness tampering that there was no threat or intimidation or corrupt persuasion to influence the witness's testimony. I'd like to take the two convictions in that order if I can your honor and I would start with the sexual abuse count and I think the critical question at some level that has to be answered by the prosecution is what is the act that caused fear by Ms. Badhand? What is the act that they say led to a sexual act? Because if you look at all the possible acts that are out there they all have some flaw that makes them not connected to fear or threat that would lead to a sexual act. Now we take them a little bit in order and if you look at the act that probably got the most attention at trial it is the fight that took place the day before the sexual act on November 20th Mr. Iu and his longtime paramour Ms. Badhand were driving around the community of Mandaree in rural North Dakota. At some point they began to argue. Ms. Badhand acknowledges she slapped Mr. Iu. Mr. Iu physically abused her. Severely, indisputably. The sexual act took place the next day. There was no connection between those two things temporarily. You've got more than 12 hours of time that passes. So you have a temporal disconnect between those two things. And at no point does Mr. Iu refer back to that. If you look at Ms. Badhand's testimony she acknowledges that one of the hallmarks of the relationship was when they had fought frequently they had sex as an act of reconciliation. That was very common for her. She said we have sex all the time. She talks about the sexual act itself and she said well at some point I just let it happen because I wanted him out of the house. And she talks about the fact that when she was asked was this sexual abuse why didn't you report it as sexual abuse she again says we had sex all the time once we fought. I'm going to throw you a little bit of a curveball although I think it's a fair inference from the government's brief here which is that if you look at the cause of the fight the night before it was about infidelity and you know you have sex with other people but you don't have sex with me and you you know have relationships with other people and then you look at this particular and that caused the black eye and the drag out fight and then you have her resisting here a little bit you know trying to keep her panties up and things like that but then he mentions infidelity again and shortly thereafter maybe not immediately but shortly thereafter she submits. And I wonder if that creates enough of a connection in other words if I just got beaten up once you know my boyfriend or significant another you know I talked about an infidelity that that's a trigger and so I'm just going to submit because I don't want to get beat up again because we're talking about that again. Why isn't that why didn't that make the necessary connection? Two reasons just trust I think one is if I can talk just a little bit about the pattern right because we did spend a lot of time on the pattern the case was well tried by the government and we spent a lot of time talking about 2011 and 2015 and Cololo IU is a bad guy which you know by the record that's hard to dispute he's a bad guy and a bad boyfriend but at no point in any of these instances did violence lead to sex right 2011 violence qua violence 2015 she throws gets a pop can thrown at her it's about their relationship it's about other things but it doesn't translate sex. If you go then to the November 20th incident and I think that's the second point about this besides there's no track record of violence leading to sex look at what Miss Badhand describes and how she describes it and I think assessing that testimony is where it's critical to look at the foolbear case that we cited in our 28J. You had a description by Miss Badhand of what happens at page 59 of the trial transcript when she's asked question at line 9 okay what happened answer we had sex and then after that he got ready and somebody picked him up there are a few more questions did you ever tell him no yup tell me what happened when you had sex and what did he do Miss Badhand answers I was still mad I was being mad but I told him I wasn't because I didn't want to get I didn't want to start another fight I didn't want to fight anymore and I kept pushing his hands off and everything so she describes in her testimony initially this she's mad right I don't want to have sex with you I'm mad at you she goes on to say because I was mad that I had a black eye and he just beat me up the night before how are you going to have sex with somebody that just and then there's a question by the government were you scared of him yes that's the only time that she says she's scared of him when the government sort of walks her into that. But doesn't the thing about the I don't want to start another fight sort of feed my theory which is they seem to fight all the time about the infidelity and she might have just said once he brought up the infidelity and they talked about that that was it I'm just I'm not I don't want a repeat of last night and so my answer to that just rises that you have to have fear or threat cause the sex and I we want to call it flawed consent or consent of frustration or consent of just wanting to not be with him anymore in that moment just get out of here and if having sex is what it takes to get rid of you that is in fact different than threat or intimidation fear of violence that that causes her to submit sex and one other point I would say though then is you have to look at 2242 it is possible for the government to prove too much on this right because the threat or fear has to be other than when you look at 2242 sub 1 other than threatening or placing the other person in fear that they will be subjected to death serious bodily injury or kidnapping so if you look back to the November 20th incident that's serious bodily injury if we're here on the assault resulting in serious bodily injury case and you ask me is that you know evidence from which the jury can find serious bodily injury I'd have to say yes there's a black eye there's there's bruising and so I think one of the problems for the government referring back to 1120 is at some level it just proves too much because it's a fear of serious bodily injury does her does her fear have to be connected to a sexual act in other words you sort of presented the the idea that her fear of him was sort of separate from their sexual relationship could the jury still make an inference though you know you can make the jury argument just as you're making here that these two things have never been connected but why couldn't a jury based on the evidence given as I understand it the evidence was that this was not the first time that there had been a jury just to infer based on the circumstances that that general fear would would play into whether or not there was consent yeah I mean I agree just Kelly at the jury can can look at and then draw inferences from the totality of her fear I would say however that the inference that they draw which must be reasonable in the context of all the testimony was fool barely is out for us has to be that the fear causes the sex and I think that's the disconnect that exists right is up you would be impossible for me to say that ms. bad had had some level of fear of mr. IU I mean just hurt their circumstances in history would indicate that but her testimony when you look through it and how it's presented and compare it to foolbear right where the issue was force and the the victim ultimately just sort of mirrored questions from the government right as opposed to saying no I'm afraid not let me have sex her description of why she had sex was we have page 63 she's asked why didn't you tell law enforcement is a sexual assault she says at line 22 because I didn't I mean we have sex all the time when we get back together so I think in the context of all the testimony and her response is a government question it's just not reasonable to infer that her fear caused the sex something else caused the sex which was that's what we do I wanted to be rid of him in that moment she's not describing the fear so I think your honor it's not an inference that is reasonable in the totality of the circumstances and I think that's why in particular you know when you consider the inferences you do have to look at the overall trial strategy here which was to demonstrate mr. IU is a bad guy right the opening is you have to look at the chain you individually you have to look at the totality when you know she testifies there's dwelling on the 2011 assault in the 2015 assault the bad priors when you get to closing there's a discussion of you have to look at the history she's living in constant fear he's using sex as a weapon there's really not what the evidence shows us it shows us a horrifically flawed and abusive relationship right to some degree both ways but ultimately what you need is that causation right and you need the ability to draw a reasonable inference that there is an act here and I think it just has to be this 1120 act correct me if I'm wrong but I think there was testimony that there was a physical struggle before this particular sexual encounter I mean we tried to remove her clothing there was a struggle she talks about that your honor long or how brief but right but I'm just wondering if that that fact is enough to to provide the connection to be kind of the bridge between these things that happened before the pattern that had occurred before and now here we go again there's a little and then she relents out of out of fear of what's going to happen the the thing I would say about that your honor is again drawing a reasonable inference of fear causing the sex right again none of the another pattern has ever translated to sex to her description of it at page 60 is when she's asked is he trying to pull down your panties or your trunk she says yes and then what happens I just let happen because I just wanted him to be gone he was gonna go work cattle so I don't think ultimately it's a reasonable inference that she was afraid it's that she's sick of it right I mean she just doesn't want him around anymore and that's I think what's the reasonable inference there the other problem with that again your honor is if you tie the struggle right to her connection of fear it is again this problem of proving too much they can't be a fear of serious bodily injury under 2242 and if you tie back to the event of the earlier day that's certainly what it looks like is you know the fear of serious bodily injury if I can and reserve the remainder of my time for a public arms very well mr. O'connick yes right may please the court opposing counsel the United States is asking that you affirm both convictions in this case the first being the sexual abuse charge and the second being the attempted tampering of a witness charge now at the beginning of appellants argument he asked what was the cause of the fear well the standard of review here is de novo and viewing in the evidence in the light most favorable to the jury's verdict including any reasonable inferences and that is for both counts in the indictment there were inferences where the jury could determine did the defendant knowingly engage in a sexual act by placing miss bad hand in fear or by threatening her and did he knowingly also act with consciousness of wrongdoing by telling her to say that she lied or to excuse me telling her to say that she had actually lied about the sexual act and to say that she should drop the charges and appellant sites foolbear but I believe foolbear is completely distinguishable from this particular set of facts foolbear was a charge of aggravated sexual abuse by force and this court specifically highlighted the distinction between 2241 aggravated sexual abuse by force and 2242 sexual abuse by stating that it would render a distinction meaningless if we accept the factual situations in foolbear in this particular case the fear that caused the victim to engage in sexual act was essentially a lifetime of abuse contrary to appellants argument the United States was not intending to paint mr. IU as a bad person the point was to demonstrate the pattern of abuse last year this court in United States v. Johnson held a similar fact pattern was admissible for under 404 B purposes now although this isn't a 404 B argument the rationale that the court held here in Johnson is equally equally applicable to the present case specifically in Johnson this court had held that you can use the prior history to explain the defendants intent and that is exactly what the jury was able to do the appellants arguments here today were presented to the jury he presented the the argument of intent and they wholly rejected it and those inferences can be derived from the past abuse where he received a federal conviction in 2011 for assaulting her while she was pregnant it seems to me that the evidence in the record from the victim was well this sort of thing happens all the time we fight unhealthy relationship we engage in sex later if that's all if that's all you've got from your victim herself can a reasonable jury just infer what they might be thinking about his prior actions don't they have to look at what the victim herself was thinking absolutely yes or no I would say though that in this case she specifically should said she was afraid that she was afraid she would get beat up again additionally she explained that when he when the kids leave I believe it always gets worse so she explained her fear and even on cross-examination when the defense pointed out to her about other acts she talked about how she was in fear when he would come and kick in her door talked about the incident in 2015 where he slapped her through a pop can at her as the the appellant stated earlier and I think the fear is reasonably inferred from her tone the jury was also able to see her demeanor in this case we the United States arrested the victim on a material witness warrant as noted in in our brief and in the record she ultimately recanted in this case based upon the defendant in March after being arrested on a sexual abuse charge he calls her from the back of a three affiliated tribes Police Department vehicle and specifically tells her to say that she lied and the jury got to see not only her testimony but this video where the defendant is telling her say that you lied this is gonna screw you know f up my life and make me a sex offender you got to get me out of this tell the prosecutor that you're gonna drop the charges also before we get to the to the witness tampering which is I think what you're touching on I want to go back to the question I was asking opposing counsel about the you know I've sat on a lot of domestic abuse cases over the years and and often the same trigger leads to the same pattern of abuse and here it should add other boyfriends and things like that am I off base here because it seems to me that that's what caused the fight the night before it got mentioned here and then she sort of submitted as she put it I don't know if she used those words once the issue of infidelity came up yes your honor and I would argue that that is the United States case for the threatening portion of it that that was taken as a threat by the victim it was a not just a fight the fight that happened in the car with some slaps and pushing but the defendant earlier that evening on November took her to his mother's grave kicked her in the stomach in the face her eye was swollen shut and that was all about infidelity I brought approximately 12 hours later when he says he wants to engage in sex and she's resisting he makes the for he says the phrase you let everybody hit it except for me and at which point as she was at that time pulling up her her panties she stops and in her own words let it happen because she didn't want to get hit again and that trigger of infidelity was a trigger specific to her and was ubiquitous throughout the entire case file when the defendant talked to excuse me the appellant talked about trying to paint mr. I was a bad individual that wasn't the intent if you even look at the conviction in 2011 that fight started over infidelity this pattern of the relationship as this court in Johnson stated was relevant to talk about a defendant's intent to talk about the relationship gives the jury enough inference to say this individual was beaten up 12 hours prior was resisting and then when given the the phrase you let everybody hit it except me she stopped resisting and based upon that that is a set that's sexual abuse that's fear because fear is very broad it's broader than force I believe that was stated in one feather additionally fear can be fear of bodily harm and additionally when it comes to the entire argument that we talked about in this case the 404 B context explains the defendant's intent in this case the the court instructed the jury on you know knowledge proof of knowledge proof of intent additionally about 404 B and the instruction specifically stated you can talk you can look at the defendants prior acts to determine his intent his knowledge and I believe that directly contradicts the appellants argument because the jury was instructed that they could those prior acts to explain the fear in addition to the threat that the defendant made what is the relevance though of what Judge Shepard said I mean one of the things we said in full bear was we talked about the fact that that force and fear were different in the two the two crimes were different I hear you saying that that fear is broader and force is narrower but arguably those acts of pulling down the panties and the struggle might actually suffice for fear it might have sufficed in full bear I don't know we weren't presented with those facts why do they suffice suffice for fear and are we just allowing that overlap that we were very cautious about in full bear to bleed in or to creep in if we were to accept those facts as evidence of fear I believe that it's absolutely applicable in this case that the the victim was in fear and that the jury could infer that from the circumstances and the fact that she's pulling up her panties shows fear I she's pulling up her panties showing she's afraid of engaging in sexual sexual act in conjunction with the fact that he beat her up and had her eyes swollen shut by assaulting her 12 hours prior I believe that it's completely separate whereas in full bear we're talking about pulling pushing shoving in a in a assault excuse me a more of a force con concept in fear fear has to be more broad and her fear could be attributed to getting beat up as she stated and that could be manifested in her resisting by saying no and also by simply telling stopping to resist like in the Reynolds case which although not exactly it was a dealing with a sentencing guideline enhancement it was the same sort of situation in that case the defendant takes a minor victim out to a secluded location he's ultimately charged with coercion coercion and enticement but he isolates her he starts touching her and she stops resisting because she was in fear the court this court held that enhancement under the guideline range for an upward enhancement on as it relates to a 2242 sexual abuse was proper because she was in fear and I think that's a directly analogous to this case which is the letting it happen cannot be viewed in isolation it has to we have to look at the totality of the circumstances the appellant is asking essentially to view the sexual act for that five minutes when it happened and even to a certain point saying well even what she did is irrelevant it's his intent what I had urged the court to do is look at the holding in Johnson in in Reynolds and apply that same reasoning by stating when you have a victim habitual victim of domestic violence when she states that she's afraid and ultimately when she's beaten up 12 hours prior she's going to be afraid and then you add that to the fact that she resists before the sexual act and the defendant gives her a trigger that she takes as a threat or the jury could infer as a threat that you let everybody hit it except me and then immediately reports it and I want to argue that when we talk about some of the corroboration in this case the jury got to hear that the miss bad hand reported immediately that she went and went got medical treatment the DNA came back to the defendant as his semen and she reported the physical assault didn't the sexual assault come out later it came out within a few hours your honor it was initially the first responding officer had had asked her if it was an assault she said it was a physical assault that officer Parisian then asked was it a sexual assault and she said yes so it was within that same time frame when the initial report she volunteered the information about the physical assault yes that's correct but that was not a voluntary I would say it's not a voluntary she it was it was something that she did not initially state I believe that at this time that miss a bad hand was in fear as the evidence demonstrated and I believe that goes to I haven't talked about the variance or the alleged hearsay statements because of the appellant has not raised them but I would just like to point out that those that these defendants active tampering in March of 2017 when he calls the victim to fabricate in favor of the defendant now I know that in the appellant's brief he specifically states that this is not something that is usually the course of action usually the the defendant is the one that opens the door to it and then the opposing party brings it in but when miss bad hand receives that call in March she ends up recanting and the jury got to see the the tone the inflection in that video recording and it the inflection is very scary for miss bad hand she is afraid of him as she as she testified to and that after she ends up recanting the United States arrest her on a material witness warrant and at trial she explains what had happened that you know she had been called by both the defendant and the defendant's sister asked to drop you know the charges and ultimately that can also be you can look at that as to why the miss bad hand acted the way she did there are all these forces at play that that make her afraid acted with the way she did and what what action are you referring to there the action of not not initially eliciting it right away that it was a sexual assault at this point she just wanted to be safe she wanted to get out of there I believe as she testified she wanted to go not be in that situation she was in the video that was admitted from officer Parisians body camera she's actually packing up all of her belongings and getting out so at that time the argument would be the fear is not only the fear of the sexual act that she's facing but she's afraid that he'll come back and that's why she acted the way I believe you know she did in terms of stating the second physical abuse before the sexual abuse I wanted to ask you about the the variants because and I understand why opposing counsel didn't focus on we have concurrent sentences and the lead charges is certainly the sexual abuse but I got to tell you I'm actually concerned about the the the post indictment statements the April 7th statement in the April 11th statement because those those were after the superseding indictment were given and what I'm concerned I'll be very specific I'm concerned that the jury may have convicted the defendant of witness tampering or some jurors may have rested their verdict on witness tampering based on the April 7th and the April 11th communications which post dated the indictment make me feel better about that because I don't feel very good about it yes sir I would say that the instructions that the court gave about influencing a witness and 404 B were there to explain how the jury could take those post indictment bad acts and specifically when the initially the judge admitted them he admitted them as substantive evidence however we asked specifically to have it you know a limiting instruction for consciousness of guilt for witness tamper for the witness tampering that occurred after the indictment additionally this is one of several acts I believe it's a big nod where it explains that if there are multiple acts that ultimately in this in this type of a case that no fatal variance existed because in the indictment listed two fraudulent representations and the district court permitted the jury to consider other misrepresentations was the jury though was where they instruct was the jury instructed that you have to limit the verdict to acts preceding the return of the indictment whatever it was April 6 April April 4th whatever whatever the date of the indictment was was there some instruction on that other than the two instructions that were given in the 404 B and influencing winner with this I do not believe so your honor however I would state that it's still harmless error because as and I believe in Thompson and I'll end with this the United States focused its entire almost entire case on the witness tampering for the fact that the defendant had made the phone call on March 10th and in Thomas it explains about how that is permissible if the United States doesn't waver in its theory pending your question that's all I have I'll start word you ended just trust you should not feel good about that because that's exactly what could have happened though evidence of those post indictment calls was possible that at least some jurors reached a verdict based on reliance on those and the Plenty arrows case would indicate that alone is a basis for reversal so you should not feel good about that what was the reasoning for not giving a limiting instruction on that the reasoning by the court was there was there a conversation about that with counsel about why because it seems to it might have you know judge Kelly I I would tell you that that testimony came up along the way and defense counsel got up and objected and then there was an ongoing colloquy about that it had been addressed pretrial if you look at what the court does it goes back after it says you can take these for consciousness of guilt you can consider them as prior bad acts and defense counsel says well now we're relying on post indictment conduct I don't know why the court didn't give it a limit instruction it's just not clear from the record but they did not in a way that makes it clear that you could not rely on those as substantive evidence of guilt on count two and I think that is fatal as to count two was all that was that brought up to the court by the defense this is this issue the issue of the issue of admitting the post indictment conduct was judge shepherd at page three excuse me at page 267 mr. Belmore talks about now we're using that indictment find mr. are you clinically liable for events that occurred after the indictment was filed he challenged that also if you look at plenty arrows that is a sufficiency question and the court's sua sponte addressed the sufficiency on count to use a little bit different right though here we at a minimum you've got the mark it's it's identified as a March 10th audio right and I thought in plenty arrows there was some confusion from the victim as to when exactly right I mean there's been occurred yeah I mean in plenty arrows you had sexual abuse conduct and it's not clear exactly when it took place up to and up to trial right because the victim was still in the house this is different but I don't think it's the difference that matters ultimately right because the allegation is on or about March 10 there was extensive discussion of what honor about means that that could include right and you had the the April calls admitted as substantive evidence right so if it were the other way around the government would be arguing that honor about certainly would include early April from March potentially yes your honor but I don't think it matters in this instance could I ask one of the things that the weakness of what I'm troubled about is and this kind of goes the other way is it seems like those later statements closed the loop on earlier statements like the April 7th statement was where bad hand told IU that things went well in an earlier conversation with police and so I don't know that I buy the consciousness of guilt necessarily of the government but there may be an argument here that those were not independent statements that it wasn't a fatal variance because they sort of were related to things that happened prior to when the indictment superseding indictment was returned I just I'm wondering what your response is because that's a key issue for me yeah I mean I think if with the point you're making just trust that this is sort of some interconnected right right effort I think the problem is if it's interconnected and necessary to it right we're still reliant on post indictment conduct if it is as you say closing the loop right we're buttoning it down we talked to her she's on board then it's a necessary part of the attempt to corruptly for conviction on this post indictment conduct so I think it can be a problem if it's independently relied on or it's a necessary component of the full act of trying to persuade her thank you honors thank you for your argument counsel case is submitted and the court will render a decision in due course you may stand aside please call our next case United States versus Charles Cross